# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JAMAL GREENFIELD,

    Plaintiff,

v.

NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,

    Defendant.

NO. CV 16-7525-KS

MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Jamal Greenfield filed a Complaint on October 7, 2016, seeking review of the denial by the Commissioner of the Social Security Administration ("SSA") of his application for Title XVI Supplemental Security Income ("SSI") benefits. (*See* Dkt. No. 1.) On September 8, 2017, the parties filed a Joint Stipulation ("J. Stip.") setting forth the disputed

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

issues in the case. (Dkt. No. 27.) Pursuant to 28 U.S.C. § 636(c), all parties have consented to proceed before the undersigned United States Magistrate Judge for all further proceedings, including entry of Judgment. (See Dkt. Nos. 11, 13.) The matter is now under submission and ready for decision.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff was born on March 14, 1995. When he was 6 years old, his mother, Shirley Reed, filed an application on his behalf for SSI benefits, which were awarded on October 31, 2001 based on the disability criteria for children. (*See* AR 16.) Plaintiff was initially determined to be disabled due to: (1) attention deficit hyperactivity; and (2) asthma. (AR 16.) When Plaintiff turned 18 on March 14, 2013, his eligibility for SSI benefits was redetermined under adult disability rules. (AR 16.) On August 9, 2013, the agency determined that Plaintiff was no longer disabled, and the "cessation date" for the termination of his SSI benefits was set at August 1, 2013. (*See* AR 16, citing 20 C.F.R. § 416.987(e).)

Plaintiff's August 1, 2013 cessation date was upheld upon reconsideration after a disability hearing by a State Agency Disability Hearing Officer. (AR 16.) On March 12, 2014, Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (AR 16.)

An initial hearing was held before an ALJ on June 25, 2014, and Plaintiff and his mother appeared at that hearing. (*See* AR 16, 83 *et seq.*) The ALJ apprised Plaintiff and his mother of Plaintiff's right to be represented by an attorney, but they elected to proceed without representation. (AR 16.) Plaintiff did not testify at that initial hearing. (AR 16.) The ALJ continued that initial hearing to allow Plaintiff and his mother time to provide additional evidence, and the ALJ ordered a new consultative psychological evaluation. (AR 16.)

A second hearing was held on October 21, 2014. (*See* AR 16, 40 *et seq.*) Both Plaintiff and his mother testified at the second hearing. (AR 48-65.) A psychological expert, Dr. Betty Borden, a medical expert, Dr. Henry Maimon, and a vocational expert ("VE"), Jane Haile, also testified. (AR 16.) The ALJ again apprised Plaintiff and his mother of their right to counsel at the hearing, but they still elected to proceed without representation. (*See* AR 16, 43-45.)

The VE testified, based on a hypothetical from the ALJ, that with limitations to "simple, routine tasks in a non-public setting" and "occasional contact with coworkers and supervisors," Plaintiff could perform three "medium unskilled jobs": (1) "laborer, stores," DOT 922.687-058, medium unskilled, SVP 2; (2) "hand packager," DOT 920.587-018, medium unskilled, SVP 2; and (3) "cook helper," DOT 317.687-010, medium unskilled, SVP 2. (AR 79-80.) After the VE's testimony, Plaintiff's mother protested, saying "I don't understand why she [*i.e.,* the VE] would say that he could get out there and work. I clearly don't believe he can get out there and work." (AR 81.)

## SUMMARY OF ADMINISTRATIVE DECISION

On January 29, 2015, the ALJ issued a decision denying Plaintiff's application for SSI disability benefits. (*See* AR 16-32.)

The ALJ began with the observation that "[m]any of the medical records predate August 2013, the month the claimant's disability status ceased" and noted that "[w]hile I have considered those documents, particularly the documents that describe the claimant's mental condition, I focus on evidence that describes the claimant during the period under consideration." (AR 17.)

The ALJ found that Plaintiff had two "severe" impairments: (1) "asthma/mild obstructive pulmonary disease," and (2) "a learning disorder." (AR 19.) The ALJ also noted that Plaintiff "may have obstructive sleep apnea," but he found "that there is insufficient evidence to establish obstructive sleep apnea as a medically determinable impairment." (AR 19-20.) The ALJ noted that Plaintiff "was in the obese range," and had "mildly elevated blood pressure" but concluded that these conditions could not be considered "severe." (AR 20.) The ALJ found that since August 1, 2013, the cessation of benefits date, Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (AR 22, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.)

The ALJ determined that since August 1, 2013, Plaintiff had the residual functional capacity ("RFC") to do a reduced range of medium work (*see* 20 C.F.R. § 416.967(c)), with certain additional limitations, including lifting and/or carrying 50 pounds occasionally and 25 pounds frequently, and "perform[ing] simple repetitive tasks in an environment that requires no public contact and no more than occasional contact with supervisors and co-workers." (AR 23.)

The ALJ determined that Plaintiff has no past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of: (1) store laborer; (2) hand packager; or (3) cook's helper. (AR 31-32.) Accordingly, the ALJ found that "[t]he claimant's disability ended on August 1, 2013, and the claimant has not become disabled again since that date." (AR 32, citing 20 C.F.R. §§ 416.987(e), 416.920(g).)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the

record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Nevertheless, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

\\
\\
\\

# DISCUSSION

## I. Disputed Issue

The parties' Joint Stipulation presents a single disputed issue: "Whether the ALJ considered Nurse Practitioner Sanchez's opinion?" (J. Stip. at 4.) Plaintiff asserts that on December 18, 2014, a nurse-practitioner at Pacific Clinics whose last name was "Sanchez," completed a form "Medical Source Statement of Ability To Do Work-Related Activities (Mental)" (the "Sanchez Statement"), which the ALJ ignored. (*See* J. Stip. at 5-6.) Plaintiff argues that the ALJ's failure to address the Sanchez Statement was legal error, was not harmless, and requires reversal. (*See* J. Stip. at 10.) Plaintiff further argues that "the ALJ never considered the evidence submitted in Exhibit 29 [AR 1038-78]," which includes Sanchez's opinion, a December 18 2014 note indicating a continued diagnosis of schizophrenia, paranoid type, a GAF score of 32, and the prescription of Abilify. (*See* J. Stip. at 6; bracketed material in original.)

For the reasons discussed below, the Court affirms the Commissioner's decision.

## II. Relevant Records And Opinion

As stated above, at issue is a 3-page Medical Source Statement of Ability to Do Work-Related Activities that is dated December 18, 2014 (the "Sanchez Statement"). The Sanchez Statement is a "check-the-box" form that indicates Plaintiff has "extreme" limitations in work-related activities such as the ability to carry out "detailed instructions" and to make judgments about "simple" or "complex" work-related decisions. (AR 1038.) In response to a question on the form, "What medical/clinical findings support this assessment?" the NP Sanchez wrote simply "schizophrenia, hallucinations, paranoia" with no additional notations, comments or details about these diagnoses. (*Id*.)

Immediately following the Sanchez Statement is an "Evaluation Form for Mental Disorders." (AR 1041-44; also part of Ex. 29F.) The signature page for that evaluation form shows December 18, 2014 as the "date of Most Recent Examination," is signed in the same distinctive handwriting as the Sanchez Statement at AR 1040, and bears a notation of "NP" and a stamp reading "Pacific Clinics." (AR 1044.) "Andrew Sanchez" is written in block uppercase letters on that signature page. (*See* AR 1044.) The only information provided in any of the specific areas of inquiry on the mental evaluation form are: (1) a handwritten notation under "Prognosis" stating "fair if client continues [illegible] medication and therapy" and (2) under "Additional Comments" it says "See attached medication evaluation form." (AR 1044.)

Immediately following the evaluation form is a 3-page form entitled "Initial Medication Support Service." (AR 1045-47.) The first page of that form is dated September 16, 2014, and the last page of that 3-page form appears to be dated December 18, 2014." (*See* AR 1045, 1047.) That form is signed in the same distinctive signature that apparently belongs to Andrew Sanchez and bears a notation "NP." (AR 1047.)

### III. <u>Applicable Law</u>

Under the applicable Social Security regulations and rulings, a nurse practitioner is not an "acceptable medical source."[2] *See* Social Security Ruling ("SSR") 06-03p, citing 20 C.F.R. § 416.913(d); *see also Britton v. Colvin,* 787 F.3d 1011, 1013 (9th Cir. 2015) (nurse practitioner is not "acceptable medical source" (citation omitted)). Nevertheless, a nurse practitioner's opinion is entitled to the weight that is warranted by the facts of the case, 20 C.F.R. § 416.927(f)(1), and the ALJ was permitted to discount Nurse Sanchez's opinion

---

[2] Because Plaintiff's efforts to reverse the agency's ineligibility determination date back to 2013, the new regulations governing opinions from "acceptable" medical sources and other sources that apply to applications filed after March 17, 2017, do not apply here. *See* 20 C.F.R. § 416.927, ("Evaluating opinion evidence for claims filed before March 27, 2017.").

7

after articulating "germane" reasons for doing so. *See Britton*, 787 F.3d at 1013; *Molina,* 674 F.3d at 1111 (ALJ may discount testimony from "other sources" that are not "acceptable medical sources" if he "gives reasons germane to each witness for doing so" (citations and internal punctuation omitted)).

Where an ALJ fails to discuss an opinion from a nurse practitioner, such a failure may be analyzed for harmlessness. *See, e.g., Whitford v. Barnhart,* 133 F. App'x 388, 389-90 (9th Cir. 2005) (where ALJ failed to discuss opinion from psychiatric nurse practitioner, error was nevertheless harmless where ALJ provided "lengthy and detailed analysis in support of his ultimate conclusion" and "result would have been the same even if he had done so," that is, discussed nurse practitioner's opinion); *Nestle v. Astrue*, No. CIV. 10-6203-JE, 2011 WL 7082542, at *13 (D. Or. Dec. 30, 2011) (where ALJ did not address opinion from nurse practitioner, error may still be analyzed for harmlessness (citing *Stout v. Commissioner,* 454 F.3d 1050, 1055 (9th Cir. 2006)). An error is harmless if it is inconsequential to the ultimate determination, or if, despite the error, the Agency's path may be reasonably discerned. *Brown-Hunter,* 806 F.3d at 492.

### IV. Discussion

As an initial matter, the Court's review of the record indicates that, contrary to Plaintiff's contentions, the ALJ cited and discussed records provided by Nurse Practitioner Sanchez and Pacific Clinics. The ALJ stated in his opinion that "[t]here is no evidence of psychiatric treatment between March 2014 and August 2014, when Mr. Greenfield began treatment at *Pacific Clinics*." (AR 21) (emphasis added). The ALJ went on to state that "[a] doctor diagnosed schizophrenia and paranoia, and estimated the claimant's GAF at 32," citing to "Exhibit 24F, p.8" in support of that assertion. (AR 21.) The Court's review reveals that Exhibit 24F at page 8 is at AR 834, which is part of the 3-page report from Pacific Clinics entitled "Initial Medication Support Service" and signed with the distinctive

signature that this Court has identified as the signature of Nurse Practitioner Sanchez. (*See* AR 832-34 and *compare id. with* AR 1040, 1044, 1047.) The ALJ also noted that "[t]he initial notes from Pacific Clinics confirm that Ms. Reed [sic] 'has not been compliant with med[ication] management." (AR 21, citing Ex. 24F at 6 [AR 832]; "sic" added; other bracketed material in original.) Thus, to the extent that Plaintiff may assert that the ALJ did not consider any opinions of Pacific Clinics or Nurse Practitioner Sanchez, that assertion appears to be contradicted by the record.

Further, while the ALJ apparently mischaracterized the report at AR 832-34 as being from a "doctor," the ALJ nonetheless discussed the findings contained in that report in his overall opinion. (*See* AR 21.) Indeed, the ALJ discussed the record evidence of Plaintiff's complaints of mental disorder(s), including possible schizophrenia, paranoia and hearing voices, in considerable detail. (*See, e.g.,* AR 20-22; 24-28.). First, the ALJ noted that while Plaintiff and his mother "consistently state that he is disabled due to symptoms of paranoia and schizophrenia, which problems manifested when he was a young child," the medical records from ENKI documenting treatment from 2004 until 2006 reveal that "the only complaint was a learning disability and attention deficit hyperactivity disorder." (AR 20, citing Ex. 28F.) The ALJ further explained that because Plaintiff's mother "specifically reported no history of psychiatric disorders" during that period, "[t]he evidence from ENKI does not support the allegation of paranoia and schizophrenia since childhood." (*Id.*)

The ALJ also noted that in July 2013, Plaintiff reported to the consultative psychologist that he was "not in mental health treatment and was not taking any psychiatric medication" despite reporting a diagnosis of schizoaffective disorder. (AR 20-21.) The ALJ also noted that in 2014 when Plaintiff was referred to two urgent care facilities for psychiatric medication, "there is no evidence he pursued diagnosis at either facility." (AR 21.) Further, the ALJ found "the diagnosis of psychotic disorder and paranoid schizophrenia are not well established" because of credibility issues raised by Dr. Riahinejad, who

diagnosed possible malingering, and medical expert in psychology, Dr. Borden, who found "little evidence of treatment for psychotic symptoms." (A.R 21- 22.) Finally, based on his review of the records, the ALJ explained that "[e]ven if schizophrenia were established as a medically determinable impairment, it would not be considered disabling." (AR 25.) Taken together, the Court finds that these are germane reasons for discounting the nurse practitioner's cursory references to diagnoses of "schizophrenia, hallucinations, paranoia." *See Britton*, 787 F.3d at 1013; *Molina,* 674 F.3d at 1111. Accordingly, while the ALJ may have misidentified Nurse Practitioner Sanchez's Medication Support documentation as having been written by a "doctor", the record plainly establishes that the ALJ considered this information and provided germane reasons for discounting its notations regarding "schizophrenia, hallucinations, paranoia."

The Court also concludes that any errors regarding the ALJ's discussion of the records from Nurse Practitioner Sanchez or Pacific Clinics more generally were harmless. As Defendant reasonably argues, the Sanchez Statement cited by Plaintiff at AR 1038-40 is a standardized "check the box" form that offers virtually no explanation for its findings, and that type of form report is typically entitled to little weight. *See, e.g., Molina,* 674 F.3d at 1111-12 (ALJ may permissibly reject check-off report that does not contain explanation of the bases for conclusions). Furthermore, as noted above, even though the ALJ does not explicitly mention the Sanchez Statement at AR 1038, the ALJ's opinion discusses in detail Plaintiff's history of mental health complaints, the lack of evidence of consistent treatment for any psychotic disorder, and the overall absence of evidence to support the schizophrenia, hallucinations, and paranoia diagnosis listed on the Sanchez Statement.

Finally, to the extent that the ALJ erred in failing to explicitly discuss all 41 pages of records in Exhibit 29F, which Plaintiff characterizes as including in relevant part "not only Sanchez's opinion but a December 18, 2014 note indicating a continued diagnosis of schizophrenia, paranoid type, a global assessment of functioning (GAF) of 32, and the

1 | prescription of Abilify" (J. Stip. at 6), the error is also harmless. As discussed above, although the ALJ did not discuss these 41 pages specifically, the ALJ did acknowledge Plaintiff's use of antipsychotic medication (Risperdal, Latuda, and, most recently, Abilify) (*see* AR 21, 25), and he provided an extensive rationale for discounting other medical professionals' diagnoses of schizophrenia and/or psychosis not otherwise specified (AR 21). The ALJ's reasons for not crediting these diagnoses include the absence of any "records of counseling or therapy for a psychotic disorder until . . . September 2013, *after* [Plaintiff] was notified that his SSI benefits would cease" (AR 21) (emphasis added). The ALJ also cited the findings of the consultative psychologist, Dr. Riahinejad, who saw Plaintiff twice – first in July 2013 before Plaintiff's August 1, 2013 eligibility cessation date, and second, a year later in July 2014 (AR 21) (citing AR 426-29 and AR 564-68) – and at both examinations observed possible malingering and did not diagnose schizophrenia. (*See* AR 21) (discussing Exhs. 6F at 2-5, 21F at 2-6). The psychological expert, Dr. Borden, also stated that "the diagnosis of psychotic disorder and paranoid schizophrenia are not well established." (AR 22.) Finally, the record reflects that Plaintiff was discharged from mental health treatment through Foothill Family Services in March 2014 because his mother declined further treatment (AR 21) (discussing Exhs. 23F at 38, 47-48, 50), Plaintiff then went without any psychiatric treatment for nearly six months (*id.*), and there are no mental status examinations or other psychological test results during the relevant period that would support a diagnosis of psychosis or schizophrenia.

In light of the foregoing, even if the ALJ had explicitly discussed the Sanchez Statement and the Pacific Clinics records at issue, it would have had no effect on the ultimate nondisability determination. Accordingly, any error is harmless and the ALJ's decision must be affirmed. *See Brown-Hunter,* 806 F.3d at 492 (error is harmless when inconsequential to ultimate disability determination).

\\
\\

**CONCLUSION**

IT IS ORDERED that the decision of the Commissioner is AFFIRMED, and Judgment shall be so ENTERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on the respective counsel for Plaintiff and Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: October 27, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE